WENDELL C. II, Appellant,

v.

STATE of Alaska, OCS, Appellee.

Vanessa G., Appellant,

v.

State of Alaska, OCS, Appellee.

Nos. S–11601, S–11604.

Supreme Court of Alaska.

July 29, 2005.

Robert D. Lewis, Lewis & Thomas, P.C., Nome, for Appellant Wendell C. II.

William B. Oberly, the Law Offices of William B. Oberly, Anchorage, for Appellant Vanessa G.

Jeffrey P. Stark, Assistant Attorney General, Anchorage, Scott J. Nordstrand, Acting Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

The issue in these appeals is whether the superior court improperly considered social science research outside the record in terminating Wendell C.'s and Vanessa G.'s parental rights to their four youngest children.[1] We conclude that the superior court's consideration of the studies did no harm because there is no reasonable likelihood that exclusion of the studies would have affected the court's decision to terminate the parents' rights. Consequently, we affirm.

## II. FACTS AND PROCEEDINGS

Wendell and Vanessa are appealing the termination of their parental rights to four of their children, Paula (born 2/16/95), William (born 9/18/96), Donald (born 6/20/01), and Julius (born 10/9/02).[2] All four are Indian children for purposes of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901–1963.

Wendell and Vanessa have received social services since 1998 because of alcohol abuse and domestic violence. Wendell testified that he started drinking alcohol when he was seventeen or eighteen years old, and that the longest he has been sober since then was for eight months when he was nineteen or twenty. Wendell has gone to jail at least four times and admits that alcohol was involved

every time. Additionally, there was testimony that Wendell has assaulted Vanessa and his parents many times while drunk, and the children have witnessed some of these incidents.

Both Wendell and Vanessa attended two alcohol rehabilitation programs in 2002 but relapsed soon after each program. Vanessa completed another rehabilitation program in December 2003 but attended only one aftercare session and apparently resumed drinking. Her landlord testified that after she completed the program he received numerous complaints about drinking and fighting at her furnished apartment, that each time he went to give her warnings he found that she had been drinking, and that when she moved out, the furnishings were broken and the apartment was filthy.

Paula, William, and Donald were placed in state care in April 2002 and have been together in a foster home since July 2003. Julius has been in state care since he was one month old—since November 2002.

In July 2004 the superior court terminated both parents' rights with respect to the four children. In its opinion, the court cited a number of studies detailing the effect of alcoholism and domestic violence upon families, and the developmental needs of children. The studies were not admitted into evidence; neither the parties nor the expert witnesses who testified at the termination trial had even mentioned them.[3] The parents appeal, contending that the superior court improperly relied on the studies.

## III. STANDARD OF REVIEW

■■■■ Whether factual findings are sufficient to satisfy the child in need of aid (CINA) statutes and rules and the Indian Child Welfare Act (ICWA) is a question of law that we review de novo, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[4] We also

1. We use pseudonyms to protect the privacy of the parties.

2. Vanessa also has two older children for whom Wendell is the Indian custodian. Although these children also are in state care, the superior court declined to terminate Vanessa's and Wendell's

parental rights as to them, and they are not involved in this appeal.

3. The superior court distributed one of the articles to the parties.

4. *E.g., Stanley B. v. State, DFYS,* 93 P.3d 403, 405 (Alaska 2004) (internal quotation marks

*apply our independent judgment when deciding due process claims.*[5]

## IV. DISCUSSION

Wendell and Vanessa argue that by citing the social science studies, the court improperly considered evidence outside the record.

A court may use extra-record facts to prove a fact or element in the case by taking judicial notice of that fact. Alaska Evidence Rule 201(a) defines judicial notice of a fact as "a court's on-the-record declaration of the existence of a fact normally decided by the trier of fact, without requiring proof of that fact."[6] A fact can be judicially noticed only if it is "not subject to reasonable dispute in that it is either (1) generally known within this state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[7] The parties can contest the taking of judicial notice: "Upon timely request, a party is entitled to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of proper notification, the request may be made after judicial notice has been taken."[8].

Wendell argues that the studies were not properly the subject of judicial notice because they were subject to reasonable dispute. In addition, he and Vanessa assert that even if the facts were ones that could be judicially noticed, they were not given an opportunity to challenge the taking of judicial notice because they first discovered the court's use of the studies in its memorandum opinion. Lastly, Wendell and Vanessa contend that the lack of notice violates their rights to due process.

■ Because we conclude that there is no reasonable likelihood that the superior court's decision to terminate parental rights would have been different absent the social science studies cited in the opinion, we affirm the superior court's decision without deciding whether or how Rule 201 should apply to this case.[9] We hasten to add that even if the superior court's reliance on these studies was not covered by Rule 201 at all,[10] still the better practice would be to inform the parties in advance of the studies the court intends to rely on, so as to give the parties an opportunity to challenge this research.[11]

Under the CINA statutes and rules and ICWA, a trial court must make several findings before it may terminate parental rights. The superior court cited to the challenged materials in making two of these findings: (1) that clear and convincing evidence shows that the parents have not remedied the conditions or conduct placing the children at risk, or have failed to make sufficient prog-

---

omitted).

**5.** *Carvalho v. Carvalho*, 838 P.2d 259, 261 n. 4 (Alaska 1992).

**6.** Alaska R. Evid. 201(a). *See* Commentary to Alaska R. Evid. 201(a) ("Rule 201 restricts only the power of the court to declare on the record, without resort to formal proof, that a particular fact exists, i.e., that something is actually true, where the fact involved is one that would otherwise be decided by the trier of fact upon submission of proof by the parties. No other practice falls within the scope of this Rule.").

**7.** Alaska R. Evid. 201(b).

**8.** Alaska R. Evid. 203(a).

**9.** *See Alderman v. Iditarod Properties, Inc.*, 104 P.3d 136, 142 (Alaska 2004) ("The admission of evidence, even if erroneous, is harmless when there is no reasonable likelihood that the admitted evidence had an appreciable effect on the court's decision."); *see also Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 451 (error in taking of judicial notice was harmless). Specifically, we do not decide whether the facts noticed based on these social science materials were facts of a type "normally decided by the trier of fact" under Rule 201(a); if so, whether the facts could be properly noticed under Rule 201(b); and if so, whether a prior warning to the parties was required under Rule 201(d).

**10.** *See* Commentary to Alaska R. Evid. 201(a) ("One aspect not covered by Rule 201 involves assumptions made by the court in its determinations of policy; *e.g.*, that a particular change in the law would probably do more harm than good.").

**11.** *Cf.* 1 Joseph M. McLaughlin et al., WEINSTEIN's FEDERAL EVIDENCE § 201.51[2], at 201–87 (2d ed. 1987) ("Judges should proceed cautiously in taking judicial notice of legislative facts," by giving the parties "an opportunity to present rebutting information" in advance of the court's reliance on the fact.).

ress in a reasonable period of time such that the children remain at a substantial risk of harm;[12] and (2) that a preponderance of the evidence shows that the department has made active but unsuccessful efforts to provide services to prevent the breakup of the family.[13] We consider the evidence in the record supporting each of these findings below.

### A. Clear and Convincing Evidence Establishes that the Parents Have Not Remedied the Conduct and Conditions Within a Reasonable Time.

■ The parents challenge the superior court's finding that the parents failed to remedy their conduct within a reasonable time under AS 47.10.088(a)(1)(B).[14] They point to the superior court's citation of social science data suggesting that alcoholic parents who abuse each other also tend to abuse their children; that attempts to recover from alcoholism are often unsuccessful; and that young children tend to have pressing emotional needs that cannot be put off. Although the superior court provided numerous citations to this research, we think there was no reasonable likelihood that these references changed any part of the result. This is because the superior court made so many other specific findings, based on admissible evidence, that were sufficient to establish the parents' failure to take steps to recover from alcoholism in time to meet the needs of their troubled children.

First, the superior court found that the parents drink and engage in domestic violence with each other, and that this behavior *alone* has "had an impact on the children," irrespective of any potential for physical abuse of the children. The effects on the children include attachment disorders that clearly preclude a lengthy, contingent return to parental custody. For example, the superior court found that Julius is at risk for fetal alcohol spectrum disorder, that he has attachment problems and is attached only to his foster mother; that Daniel is at risk for attachment problems; that William was affected by the family violence, noting testimony that his relationship with his parents was "confusing" and that he saw Paula as his protector; and that Paula was similar to William, noting testimony that her problems had become "more severe" (e.g., she was "striking out" and "emotionally shutting down"). The superior court further found that these emotional problems became less severe as some of the children entered foster care and began bonding with foster parents. We believe these findings are primarily what led the superior court to conclude that the "children cannot wait" for their parents to recover from their alcoholism, and we think there is no reasonable likelihood that this conclusion would have been different absent the social science citations.

Second, the superior court found, citing testimony by specialists familiar with the parents' treatment history, that both parents would need to undertake lengthy treatment for alcoholism (e.g., of "one to two years" in Vanessa's case), and that "success did not seem likely" in either case. It is clear to us that this conclusion was also based on the trial evidence, and that it would not have been different had the superior court not consulted the academic articles.

Third, these findings are sufficient to sustain the legal conclusion that the parents failed to remedy their conduct in a reasonable time. The superior court found (in a part of its opinion that the parents do not challenge) that the children were children in need of aid under (among other provisions) AS 47.10.011(10), which permits a CINA ad-

---

12. AS 47.10.088(a)(1)(B); CINA Rule 18(c)(1)(A).

13. 25 U.S.C. § 1912(d); CINA Rule 18(c)(2)(B).

14. AS 47.10.088(a)(1)(B) says that parental rights cannot be terminated unless the superior court finds that the parent:

(i) has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or

(ii) has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury.

In making this determination, the court may consider "the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs." AS 47.10.088(b)(1).

judication where the parents' use of alcohol has "substantially impaired" their ability to parent and "resulted in a substantial risk of harm to the children." The findings recited above establish a failure to remedy this conduct in a reasonable time: the parents would have to engage in a treatment procedure of one to two years, the prospects for success were poor, and the children's attachment problems made it imperative to eliminate contingencies in their relationships with their care givers. These circumstances suffice to establish a failure to remedy conduct, in light of the low likelihood of "returning the child to the parent within a reasonable time based on the child's age or needs." [15]

### B. A Preponderance of the Evidence Supports that the Department Made Active but Unsuccessful Efforts To Reunify Wendell and Vanessa with Their Children.

■ Wendell argues that no evidence in the record supports the superior court's finding that there were "active efforts" to provide remedial programs designed to prevent the break-up of the family and he contests the use of another social science study in this portion of the court's opinion.

Wendell argued before the superior court that the department should have considered alternatives other than that he needed to quit drinking alcohol to reunify his family, such as developing a safety net for the children when he and Vanessa were drinking. The superior court discounted Wendell's "safety net" argument by pointing out that his testimony was replete with statements that he agreed he needed to stop drinking in order to retain custody of his children, and by noting that Wendell presented no evidence that a "safety net" approach would work. The superior court then quoted a social science study indicating that maternal alcoholism may result in negative impacts on the mother-child relationship, apparently to support a conclusion that the feasibility of a "safety net" approach "may be difficult to prove." We conclude that this study is a harmless side note that

has nothing to do with the court's determination that Wendell was provided with active efforts in the form of alcohol treatment programs. In light of the harm to the children that had already resulted from alcoholism (as recounted above), we also believe that the department's decision to make Wendell's abstinence a precondition to reunification was reasonable, and that the superior court did not err in finding that efforts based on this precondition were sufficiently "active efforts" to reunify the family within the meaning of the statute.

Vanessa also argues that the record does not support the "active efforts" finding because when she was progressing through her third treatment program, the department did not support her but instead changed her case plan goal from reunification to adoption. The "active efforts" finding in her case is supported by the two alcohol treatment programs provided to Vanessa in 2002. Although she completed both programs, she relapsed soon after each one. At that point, the department sought permanency for the children. We agree with the superior court that the department engaged in sufficiently active efforts by helping place Vanessa in two alcohol treatment programs essential to reunifying her with her children. After two relapses, it was not required to do more, even if its change of course was abrupt.

## V. CONCLUSION

We AFFIRM the superior court's decision to terminate Wendell's and Vanessa's parental rights over Paula, William, Donald, and Julius.

---

15. AS 47.10.088(b)(1); *see also Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Family &* *Youth Servs.,* 74 P.3d 896, 902–03 (Alaska 2003).