Bernhard F. MAECKLE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2844.

Court of Appeals of Alaska.

June 15, 1990.

Michael J. Keenan, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Bernhard F. Maeckle was convicted by a jury of two counts of guiding without a license and two counts of possessing illegally taken game. Superior Court Judge Victor D. Carlson sentenced Maeckle to concurrent terms of two years with one year suspended for guiding without a license and six months for possessing illegally taken game. On appeal, Maeckle contends that the statute imposing felony sanctions for guiding without a license violated his rights to equal protection and due process. He also argues that the trial court erred in instructing the jury to disregard certain comments made by his trial counsel and in allowing hearsay to be admitted at trial. Finally, Maeckle argues that his sentence is excessive. We affirm Maeckle's conviction but remand for reconsideration of the sentence.

In the fall of 1987, Maeckle and a man named Bruno Zedler guided two hunters for big game in the Lake Iliamna region. One of the hunters was an undercover officer working for the Alaska State Troopers. Zedler appeared to be primarily in charge of the hunt, with Maeckle acting as his assistant guide. Neither man had a guide's license. As a result of his participation in the hunt, Maeckle was convicted of two counts of guiding without a license, in violation of former AS 08.54.210(a)(6), and possessing illegally taken game, in violation of 5 AAC 92.140(c).

Under former AS 08.54.210(b), guiding without a valid license was punishable as a felony. The statute provided for a minimum term of one year in prison and a maximum term of three years. Prior to sentencing, Maeckle unsuccessfully moved to be sentenced as if he had been convicted of a misdemeanor, asserting punishing his offense as a felony would violate his rights to equal protection and due process. Maeckle renews this argument on appeal. Maeckle points out that of the numerous licensed professions covered by Title 8 of the Alaska Statutes, guiding is the only one in which a person can be punished as a felon for failing to have a license. Maeckle argues that the imposition of more severe penalties for guiding without a license than for practicing other licensed professions without a license is discriminatory and in violation of his right to equal protection.

For purposes of deciding Maeckle's claim, we need consider only the Alaska Constitution, since our supreme court has interpreted Alaska's equal protection and due process clauses more broadly than the federal courts have construed parallel provisions of the United States Constitution. *Stiegele v. State*, 685 P.2d 1255, 1257 (Alaska 1984). To determine the validity of a statute challenged under Alaska's equal protection clause, we apply a trivalent standard, harmonizing conflicts between individual and governmental interests by balancing the significance of the individual right that has been infringed, the legitimacy and importance of the state's regulatory purpose, and the efficacy of the challenged enactment as a vehicle for carrying out that purpose. *State v. Ensearch Alaska Constr., Inc.*, 787 P.2d 624, 631 (Alaska 1989). As the impacted individual interest increases in importance, Alaska's Constitution demands a proportionally more compelling state purpose and an increasingly closer link between that purpose and the statutory means chosen to effectuate it. *Id.*

Even before applying Alaska's sliding scale approach to equal protection, however, we must attempt to identify the class or classes of individuals affected by the challenged enactment, for it is axiomatic that the equal protection clause deals only with discriminatory conduct between members of the same class. Alaska's sliding scale analysis thus presupposes the existence of similarly situated individuals or groups who have received differential treatment.

Maeckle has not specifically identified the group that he contends has been subjected to discrimination or the similarly situated group that has received favored treatment. He appears to assume that guides comprise the members of the class singled out for disparate treatment, while all remaining licensed professionals comprise the similarly situated group that has

received preferential treatment. This is clearly not the case.

■ In considering Maeckle's claim, we may assume that all licensed professionals comprise a single class of similarly situated individuals. It hardly follows, however, that offenders who practice various professions without a valid license are members of the same class. Maeckle's only claim is that those who practice one profession without a valid license must be punished equally with those who practice another profession without a license. By definition, however, one who practices accounting, or law, or dentistry, or *guiding* without a license is not a qualified member of that profession. Not being a member of that profession, the person is likewise not a member of the larger class that includes all licensed professionals.

A person who practices a licensed profession without a license shares common traits only with other offenders who have committed the same misconduct. The legislature is vested with broad authority to define different criminal acts and to prescribe differing penalties for different crimes. *See, e.g., Dancer v. State,* 715 P.2d 1174, 1180–81 (Alaska App.1986). Even a cursory review of Title 8 of the Alaska Statutes makes it clear that the legislature has subjected each licensed profession to different requirements and that it has established separate offenses, with separate penalty provisions, for each profession. The conduct for which Maeckle was convicted and punished was guiding without a license. Had he elected instead to practice hair dressing or some other licensed profession without a license, he would have been subject to a lesser penalty, but that is only because he would have engaged in different conduct and would have committed a different crime.

Just as there is no basis for finding that the conduct of offenders who practice different licensed professions without a license is the same conduct, so too there is no basis for assuming that any other commonality of interest exists among offenders who disregard the licensing requirements for different licensed professions.

Because Maeckle was subject to the same penalties as any other person committing the same misconduct—that is, guiding without a license—his right to equal protection was not violated by the provision subjecting him to felony sanctions for the offense. In short, for purposes of equal protection, the challenged statutory scheme simply was not discriminatory.

■ Even assuming that Alaska's sliding scale approach to equal protection analysis were applicable in Maeckle's case, we would find no violation of equal protection. The first factor in the analysis is the importance of the individual interest impinged. While Maeckle asserts that the challenged statute impinges on his fundamental right to freedom, a vitally important interest, this assertion is an overstatement. Because Maeckle does not challenge the propriety of the statutes regulating the guiding profession but only the propriety of the specific penalties imposed for violating the statutory requirements, the individual interest affected by the challenged statute is the relatively narrow interest of a convicted offender in minimizing the punishment for an offense. This interest, though certainly not negligible, is not sufficiently significant to trigger strict scrutiny of the statute's legislative purposes. *See, e.g., Griffith v. State,* 641 P.2d 228, 231 (Alaska App.1982).

■ In contrast, the challenged statute involves a governmental purpose that is both legitimate and highly significant. Given the importance of Alaska's wildlife resources and the difficulties inherent in the enforcement of guiding statutes in remote locations, the state has a strong and legitimate interest in enacting firm measures to discourage unlicensed guiding. Moreover, the challenged statute, which made guiding without a license a minor felony, was a reasonable, direct, and effective means of furthering the state's interest. Thus, application of Alaska's sliding scale analysis yields the conclusion that punishing violations of former AS 08.54.-210(b) as a felony did not violate Maeckle's right to equal protection.

Maeckle alternatively presses his claim under Alaska's due process clause. Even a nondiscriminatory statute may violate due process if it is irrational and arbitrary. *See, e.g., State v. Erickson,* 574 P.2d 1, 18 (Alaska 1978). In the context of criminal sentencing, however, it is settled that a statutorily specified penalty will be deemed irrational and arbitrary only when it is cruel and unusual, that is, "so disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice." *Dancer,* 715 P.2d at 1180.

Maeckle argues that penalizing the offense of guiding without a license as a felony does amount to arbitrary and shockingly disproportionate punishment, particularly because former AS 08.54.210(b) provided for a minimum term of one year to serve. As acknowledged by the state and recognized by the sentencing court, however, the one-year minimum sentence was not mandatory. *See, e.g., Kodiak v. Jackson,* 584 P.2d 1130, 1133 (Alaska 1978); *Speas v. State,* 511 P.2d 130, 132–33 (Alaska 1973). Given the legislature's broad power to define and punish crimes, we cannot say that a maximum term of up to three years for guiding without a license is "so disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice." *Dancer,* 715 P.2d at 1180.[1]

Maeckle separately argues that his sentence is excessive. He relies strongly on this court's holding in *Graybill v. State,* 672 P.2d 138 (Alaska App.1983). However, the supreme court reversed this court's *Graybill* decision. *See State v. Graybill,* 695 P.2d 725 (Alaska 1985) (approving a composite term of seven years with five and one-half suspended for a repeat offender convicted of multiple misdemeanor hunting violations). Given the supreme court's holding in *Graybill,* it is clear that, if Maeckle had a record of prior similar convictions, his composite sentence of two years with one year suspended would not be excessive, even had he been convicted as a misdemeanor offender. *See also Brown v. State,* 693 P.2d 324, 330–31 (Alaska App. 1984). Although Maeckle was not a repeat offender and had no prior convictions, he was convicted of a felony rather than a misdemeanor, a factor that could arguably offset Maeckle's first offender status and justify a sentence comparable to that approved in *Graybill.*

Nevertheless, Maeckle's case involves additional circumstances, which we deem to be exceptional. The felony sentencing provisions of former AS 08.54.210(b) were enacted shortly before Maeckle committed the offenses in this case. Guiding without a license had previously been punishable only as a misdemeanor. More significantly, several months after Maeckle's sentencing, the legislature further amended the penalty provisions, again making unlicensed guiding punishable as a misdemeanor for first offenders. The amended statute retained felony sanctions only for offenders who had previously been convicted of similar misconduct. *See* AS 08.54.520(c).

Because the most recent amendment had not yet been enacted when Maeckle was sentenced, the sentencing court can hardly be faulted for failing to take it into ac-

---

1.  Maeckle has presented two additional arguments on the merits of his conviction. Neither requires extensive discussion. First, Maeckle contends that the court erred in instructing the jury to disregard a portion of his trial counsel's final argument. No objection to the instruction was voiced below, however, and we find no plain error. In context, the disputed instruction clearly refers only to the remark made by Maeckle's counsel immediately before the state's objection. There is no realistic possibility that it could have been misunderstood as referring to the totality of counsel's final argument. Second, Maeckle objects to purported hearsay that was admitted under the coconspirator excep-
tion. In our view, however, there was ample independent evidence at trial to support a finding that Maeckle and Zedler were involved in a conspiracy and that the challenged statements were made in furtherance of it. Moreover, the statements do not appear to have been admitted to prove the truth of the matter asserted therein and were therefore subject to admission as nonhearsay. Finally, even if we were to find error, the error would not have been prejudicial. We note particularly that Zedler's 1986 statement, if taken as an assertion of the truth of the matter it asserts, is exculpatory rather than inculpatory and could not conceivably have resulted in harm to Maeckle.

count. The statutory revision is nonetheless now extremely relevant as the legislature's most recent assessment of the seriousness of the misconduct involved in this case. *See, e.g., Bolhouse v. State,* 687 P.2d 1166, 1174 (Alaska App.1984). The history of the penalty provision strongly supports the conclusion that the legislature thought better of its decision to punish guiding without a license as a felony in all cases and concluded that first offenders should only be subjected to misdemeanor penalties.

Under the circumstances, we conclude that the interest of justice requires Maeckle's case to be remanded to the superior court for reconsideration of the sentence in light of the amendments adopted following his initial sentencing hearing. On remand, although the sentencing court will not be strictly bound by the amended sentencing provisions, it should give due regard to them in redetermining an appropriate overall sentence.

The conviction is AFFIRMED. This case is REMANDED for reconsideration of the sentence.