PUBLIC EMPLOYEES' RETIREMENT SYSTEM; Teachers' Retirement System; State of Alaska, and Department of Administration, Division of Retirement and Benefits, as administrator of the Public Employees' Retirement System and the Teachers' Retirement System, Appellants/Cross–Appellees,

v.

A. John GALLANT, Robert G. Bellmore, and Donna J. Bellmore, individually and on behalf of all persons similarly situated, Appellees/Cross–Appellants.

Nos. S–11926, S–11945.

Supreme Court of Alaska.

March 9, 2007.

Stephen C. Slotnick, Assistant Attorney General, David W. Márquez, Attorney General, Juneau, for Appellants/Cross–Appellees.

Linda M. O'Bannon, Ray R. Brown, Dillon & Findley, P.C., Anchorage, Bennett A. McConaughy, Michael D. Sandler, Sandler Ahern & McConaughy, PLLC, Seattle, for Appellees/Cross–Appellants.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

By statute, two Alaska retirement systems pay retirees who reside in the state a cost-of-living allowance that adds ten percent to their basic retirement pay. The question presented is whether failing to pay a similar allowance to retirees who live in high cost areas outside Alaska violates the equal protection clause of the Alaska Constitution. We hold that it does not because the purpose of the allowance—encouraging retirees to continue to live in Alaska by partially offsetting Alaska's higher cost of living—is legitimate and it bears a fair and substantial relationship to the achievement of this objective.

## II. FACTS AND PROCEEDINGS

Many former public employees receive retirement benefits under the Public Employees' Retirement System (PERS). Monthly retirement benefits are calculated by taking some percentage of average monthly compensation and multiplying that amount by years of service.[1] Retirees sixty-five years old or older, or who first entered the system before July 2, 1986, residing in Alaska are entitled to a monthly cost-of-living allowance (COLA) in addition to the base benefit.[2] The COLA is the greater of fifty dollars or ten percent of the basic monthly benefit.[3] Public school teachers receive retirement benefits under the Teachers' Retirement System (TRS). Retirement benefits under TRS are calculated in much the same manner as under PERS, and retiree teachers are eligible for a similar COLA.[4] The statutes governing both systems have contained COLAs since the 1960s.

John Gallant is a retired correctional officer who receives benefits under PERS but, because he lives in Hawaii, does not receive a COLA. Robert and Donna Bellmore are retired public school employees who live in Kenai and receive the TRS COLA but plan to move outside Alaska in the near future. Gallant and the Bellmores (collectively Gallant) filed a class action against the administrators of PERS and TRS, arguing that the COLA residency requirement was an unconstitutional restriction on the right to travel and a violation of equal protection of the law under the provisions of the federal and state constitutions. Gallant also argued that denial of the COLA was a breach of the state's contract with the members of PERS and TRS under article XII, section 7 of the Alas-

---

1. AS 39.35.370(c). Between two and two-and-one-half percent of monthly salary is used for the calculation, depending on the date of employment.

2. AS 39.35.480(a).

3. AS 39.35.480(a).

4. AS 14.25.110(d) (calculation of retirement benefits); AS 14.25.142 (COLA).

ka Constitution. Gallant requested damages under the contract claim for past non-receipt of the COLA.

■ The parties filed cross-motions for summary judgment. The superior court ruled that the residency requirement was invalid on state equal protection grounds and granted Gallant's motion for summary judgment.[5] The superior court also ruled that Gallant was entitled to prospective relief only and granted the state's cross-motion for summary judgment on the issue of damages.

The state appeals from the grant of summary judgment to Gallant and from the denial of its cross-motion for summary judgment. Gallant cross-appeals from the denial of his motion for summary judgment as to damages.

## III. DISCUSSION

■ "We review a grant or denial of summary judgment de novo."[6] The equal protection challenge presents a question of law to which this court applies its independent judgment.[7] "A constitutional challenge to a statute must overcome a presumption of constitutionality."[8]

### A. State Equal Protection and the Right To Travel

■ The Alaska Constitution provides that all persons are "entitled to equal rights, opportunities, and protection under the law."[9] We interpret this provision to be a "command to state and local governments to treat those who are similarly situated alike."[10] When equal protection claims are raised, the question is whether two groups of people who are treated differently are similarly situated and therefore are entitled to equal treatment under the constitution. In order to determine whether differently treated groups are similarly situated, we look to the state's reasons for treating the groups differently. As a matter of nomenclature we refer to that portion of a law that treats two groups differently as a "classification."[11] We most often review a classification "by asking whether a legitimate reason for disparate treatment exists, and, given a legitimate reason, whether the enactment creating the classification bears a fair and substantial relationship to that reason."[12]

■ The "legitimate reason" inquiry is the standard level of scrutiny that we apply in equal protection cases. But when a classification is based on a suspect factor (for

5. The court rejected the state's argument based on article I, section 23, that only the more relaxed standards of the Federal Constitution should be applied. Section 23 provides that the Alaska Constitution "does not prohibit the State from granting preferences, on the basis of Alaska residence, to residents of the State over nonresidents to the extent permitted by the Constitution of the United States." On appeal the state continues to argue, in addition to its argument concerning the application of the equal protection clause of the state constitution, that section 23 applies. Because we conclude that the COLA does not violate equal protection under the Alaska Constitution, it is unnecessary for us to determine whether article I, section 23 applies.

Gallant challenges the premise of the state's argument. He contends that the federal standards are not more relaxed than state standards, rather they require strict scrutiny review of this case. In support of this argument Gallant cites *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (striking down residency requirements for indigent medical care), and some cases following *Maricopa County*. But these cases are inapplicable because they involve durational residency restrictions that deny essential state benefits to recent residents, thus bestowing a sort of second-class

citizenship on newcomers. The statutory system at issue in this case does not impose a durational residency requirement and treats all residents equally. We thus reject Gallant's argument that the federal constitution requires that the system under review be reviewed under a strict scrutiny standard. *See Int'l Org. of Masters, Mates & Pilots v. Andrews*, 831 F.2d 843, 846–47 (9th Cir.1987) (rejecting strict scrutiny review of Alaska statute providing that resident employees of state ferry system would receive cost-of-living differential).

6. *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 785 (Alaska 2005).

7. *Id.*

8. *Id.*

9. ALASKA CONST art. I, § 1.

10. *Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 396 (Alaska 1994).

11. *Id.*

12. *Id.*

example, race, national origin, or alienage) or infringes on fundamental rights (for example, voting, litigating, or the exercise of intimate personal choices) a classification will be upheld only when the enactment furthers a "compelling state interest" and the enactment is "necessary" to the achievement of that interest.[13] We refer to this as the strict scrutiny standard. Some cases fall between standard scrutiny and strict scrutiny. With respect to these we use a sliding scale. "As the right asserted becomes 'more fundamental' or the classification scheme employed becomes 'more constitutionally suspect,' the challenged law 'is subjected to more rigorous scrutiny at a more elevated position on our sliding scale.' "[14] Although theoretically there are any number of requirements that could be used in cases falling between standard and strict scrutiny, we have in practice required that classifications be based on governmental interests that are "important," and, as with standard scrutiny, we have insisted that the enactments bear a substantial relationship to the accomplishment of their objectives.[15]

In the present case Gallant claims that the classification in question burdens the right to travel. We have recognized the right to travel as a right that is protected by the equal protection clause of the state constitution.[16] In order to determine the degree of scrutiny that should be applied in cases claiming an infringement of the right to travel, we balance the extent of the infringement against the purpose of the statute and the closeness of the relationship between the means employed by the statute to further that purpose and the purpose itself.[17] There is an awkwardness to this approach. In order to determine what degree of scrutiny to employ, we must address the whole range of questions posed by our equal protection methodology. In other words, we have to quantify (a) the importance of the state's purpose, (b) the extent of the infringement on the right to travel, and (c) the closeness of the relationship between the means employed by the statute and its purpose. The answers to these questions determine both the degree of scrutiny that we should employ and whether the challenged statute violates the equal protection clause.[18] Although this approach is cumbersome, we will continue to use it because it requires that we examine in some form the factors that should be examined in cases of this nature.

## B. The Decision of the Superior Court

The superior court viewed the purpose of the COLA as "[a]lignment of benefits to economic conditions of the retiree's locale." The court decided to employ a level of scrutiny higher than standard scrutiny because it concluded that the COLA burdened the right to travel—that is the right to live wherever in the United States one chooses—because the COLA "cannot but tend to affect the destinations of choice of Alaska pensioners." Even using heightened scrutiny, the court found that the state's purpose of equalizing benefits was "sufficiently weighty and meritorious."

13. *Id.; State v. Ostrosky,* 667 P.2d 1184, 1192–93 (Alaska 1983).

14. *State, Dep't of Revenue, Permanent Fund Dividend Div. v. Cosio,* 858 P.2d 621, 629 (Alaska 1993) (quoting *Ostrosky,* 667 P.2d at 1192–93).

15. *Stanek v. Kenai Peninsula Borough,* 81 P.3d 268, 270 (Alaska 2003). In this respect our review in cases falling between standard and strict scrutiny has been similar to intermediate scrutiny analysis under the Federal Equal Protection Clause. *Cosio,* 858 P.2d at 626.

16. *Church v. State, Dep't of Revenue,* 973 P.2d 1125, 1131 (Alaska 1999); *Brodigan v. Alaska Dep't of Revenue,* 900 P.2d 728, 734 n. 13 (Alaska 1995); *Alaska Pac. Assurance Co. v. Brown,* 687 P.2d 264, 271 (Alaska 1984).

17. *Brown,* 687 P.2d at 271 n. 10 (citing *Williams v. Zobel,* 619 P.2d 448, 453 (Alaska 1980), *rev'd on other grounds,* 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982)).

18. This was recognized, at least implicitly, in *Brown,* 687 P.2d at 272:

> The parties' contentions regarding whether the right to travel is burdened by [the statutory section in question] and the extent of that burden are related both to the selection of the standard of review and the question of whether the statute is fairly designed to accomplish its purposes. We will therefore defer discussion of this point until a discussion of the statutory purposes.

But the means used to accomplish this purpose fell short.

The court found that the purpose of equalizing benefits according to local costs of living was not sufficiently furthered by paying a COLA only to those who stay in Alaska. Recognizing that there are now several areas of the United States with higher costs of living than Anchorage, the court concluded that "penalizing those who retire to the expanding number of higher cost locales [outside Alaska] is no longer constitutionally permissible, if ever it were." It followed that "those living in metropolitan areas where the statistical data show a higher cost of living than Anchorage, . . . are prospectively entitled to receive the [COLA]." As to other retirees living outside Alaska in lower cost areas, the court indicated that they would not be entitled to the COLA prospectively if the legislature amended the statutes to "institute a constitutionally permissible cost-of-living adjustment within a reasonable time." Barring such an amendment, they too would be entitled to COLA payments because the court had previously ruled that the residency requirement of the COLA statutes would be severable. Thus, when the residency requirement was stricken as unconstitutional, the rest of the law providing for payment of the COLA would still stand. All retirees would then be entitled to receive COLA payments regardless of where they lived unless the legislature acted to restrict COLA payments to Alaska retirees and those living outside Alaska in high cost-of-living areas.

The superior court gave the following account of comparative living costs in Alaska and in locations outside the state:

According to one study the cost of living in Anchorage is 107% of a "standard" city. Plaintiffs aver that 25% of departed PERS retirees select the state of Washington. The cost of living in Seattle is about 120%

the cost of living in Anchorage. Honolulu is 138.5% of the standard city, or 129% of Anchorage.[1] . . .

The State points out, using the same data, that the composite cost of living for lower income households in Alaska is 12.5% above the national average. The composite cost of living index for Alaska is 28.2% higher than the national average, higher than all states but California, New Jersey, Hawaii, and the District of Columbia.[19]

---

1. American cities with higher costs than Anchorage include New York (Manhattan), San Francisco, Jersey City, San Jose, Honolulu, Seattle, Stamford–Norwalk, Bergen–Passaic, Oakland, Chicago, Newark–Elizabeth, San Diego, Los Angeles–Long Beach, Washington D.C./suburban Maryland, Middlesex, Boston, Framingham–Natick, and Nassau County.

The court also observed that "[o]f 26,000 PERS and TRS benefit recipients, 62% live in Alaska, and 38% outside. According to the state, only 3% of benefit recipients live in locales with higher costs of living than Alaska."

## C. The COLA Residency Requirement Does Not Violate Equal Protection.

We proceed to examine the three inquiries required by the method of analysis that we have employed in equal protection cases involving a claimed violation of the right to travel.

### 1. The purpose of the COLA and its importance

 The main purpose of the COLA according to the State Division of Retirement and Benefits is "to assist retirees, who elect to remain in the state, to defray the higher cost of living in Alaska."[20] The state contends in its opening brief that this is a legitimate purpose in itself and that enabling re-

19. The court observed that the parties did not agree on the validity and purport of the statistical data, but the court used the statistics as "illustrative of scope." We use them in the same way.

20. State of Alaska, Alaska Retirement and Benefits, http://www.state.ak.us/drb/pers/pers-cola.shtml (last visited July 28, 2006). In its brief the state argues:

A high cost of living is a disincentive for a retiree on a fixed income to remain in Alaska, because the retiree can obtain more for his or her income elsewhere. Accordingly, in the early years of statehood, the State of Alaska determined to reverse-or at least ameliorate-this disincentive for public employees by providing a COLA for retired public employees who stay in the state.

tirees to stay in the state after they retire also benefits public employers:

> Consistent with promoting public service, the COLA helps attract qualified employees who wish to make Alaska their home even after retirement. Employees who plan to remain in Alaska after retirement are also less likely to leave their jobs, and the public interest is served when experienced employees are retained. The public also benefits because these employees will tend to be more committed to the state's long term interests.

Gallant disagrees that the COLA is intended to encourage retirees to continue to reside in Alaska. He cites the stated purpose of PERS:

> The purpose of this chapter is to encourage qualified personnel to enter and remain in the service of the state or a political subdivision or public organization of the state by establishing a system for the payment of retirement, disability, and death benefits to or on behalf of the employees.[21]

But he does not acknowledge that paying a COLA to retirees is related to this purpose or that encouraging them to continue to reside in Alaska is a legitimate purpose. Gallant mentions only one purpose that the COLA has: "to preserve the buying power of retirement dollars by compensating for high living costs in Alaska."

We agree with the state that the main purpose of the COLA is to encourage retired public employees to continue to live in the state by helping to defray the higher cost of living. This conflicts with the superior court's conclusion that the COLA was broadly meant to equalize the value of state retirement benefits regardless of whether retirees choose to live in Alaska or some other high cost location. We think that the fact that the COLA statutes have always provided that the COLA is only available to retirees who continue to live in the state renders untenable the superior court's conclusion. Gallant's statement of the COLA purpose—"compensating for high living costs in Alaska"—also conflicts with the superior court's geographically unlimited conception of the purpose of COLA payments. Further, when one asks why the legislature might have wished to pay a COLA to retirees in order, as Gallant would have it, to compensate for high living costs in Alaska, the only plausible answer is that given by the state: to encourage retirees to continue to live in Alaska. Retirees not living in Alaska have no need to be compensated for Alaska's high living costs.

How important is this purpose? We believe, for the reasons that follow, that it is at least legitimate. The policy of encouraging Alaskans to continue to reside in Alaska is one that the legislature has pursued in other contexts. As we stated in *State, Department of Revenue, Permanent Fund Dividend Division v. Cosio,* one of the three main purposes of the Permanent Fund Dividend Program is "to encourage persons to maintain their residence in Alaska and to reduce population turnover in the state."[22] We recognized in *Cosio* that this purpose was "legitimate."[23] Likewise, the Longevity Bonus Program was also enacted for this purpose: "Alaska's longevity bonus program was enacted by the Alaska Legislature in 1972 for the purpose of providing to Alaskans age sixty-five years and older an incentive to continue to live in Alaska."[24]

The legislature could readily view as desirable the goal of encouraging retired public employees to remain in the state. As a class, they tend to be responsible and economically stable citizens. They make minimal demands on such big ticket government items as public education and law enforcement, they have generally comprehensive health insurance, and they often positively contribute to society by volunteering in charitable

---

21. AS 39.35.010(a). Parallel language pertaining to TRS appears in AS 14.25.012(a).

22. 858 P.2d at 627.

23. *Id.* As a general proposition this is not controversial, for, as Justice Brennan explained in his concurring opinion in *Zobel v. Williams,* 457 U.S.

55, 67–68, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982), "a state may make residence within its boundaries more attractive by offering direct benefits to its citizens."

24. *Simpson v. Murkowski,* 129 P.3d 435, 437 (Alaska 2006).

and civic endeavors. Further, retirees contribute to the economy when they remain in the state, spending the money that they have earned during their working lives.

### 2. The relationship between the COLA and its purpose

■ Given that the COLA is designed to encourage public employee retirees to continue to live in the state by neutralizing or lessening the incentive to move from the state created by Alaska's high living costs, what can be said about the COLA as a means to that end? We conclude that it is fairly and substantially related.

As the statistics referred to by the superior court show, the cost of living in Alaska is still substantially higher than the average cost of living in the United States. The decision of a retired person to stay in the state or move to another one can be influenced by many factors. Some of the most important are the location of close relatives and friends, the desire to remain a part of the community in which the retiree has worked and lived for many years, weather, cultural and recreational resources, income, and the cost of living. To the extent that cost of living is a factor that creates a disincentive to stay in the state, the COLA works to neutralize it by increasing income.

The disincentive to remain in Alaska caused by high costs is not undercut by the fact that there are now a number of metropolitan areas outside Alaska with higher living costs. The cost of living in most areas of the United States is still lower than in Alaska, and in many areas it is much lower.[25] Thus the rationale for neutralizing the incentive to move still exists. Further, insofar as economics are a factor in decisions about where to live after retirement, the COLA seems well designed to achieve its purpose because it does defray to some extent Alaska's high living costs. We think the COLA can readily be described as having a fair and substantial relationship to its purpose.

### 3. Nature and extent of the infringement

■ The COLA of course is intended to influence retirees' decision-making as to where to live after retirement. It can be said then that to the extent that the COLA is effective in causing retirees to remain in the state, it also works to deter them from exercising their right to live elsewhere. We think that this is acceptable because the COLA is reasonably related to the cost-of-living differential between Alaska and most other areas of the United States and because the COLA is a small part of retirees' retirement income.

The fact that Alaska still has a higher living cost than most other areas in the United States has already been discussed and is reflected in the statistics employed by the superior court. The fact that there are currently a number of metropolitan areas in the United States with higher living costs than Anchorage—though not necessarily Bush Alaska—simply means that there is a cost disincentive for retirees to retire to those areas. This is an effect independent of the COLA. That is, if all retirees were paid a bonus of ten percent of their base retirement regardless of where they chose to live, there still would be a cost disincentive to retire to high cost areas such as Honolulu or Seattle. No Alaska program needs to be designed to make up for the high cost of living in such areas.

At its core, the right to travel appears to be implicit in the federal structure of our national government. The right of "free interstate migration" finds "its unmistakable essence in that document that transformed a loose confederation of States into one Nation."[26] Care must be taken to avoid imposing a penalty on free migration that would

---

25. According to the Department of Labor and Workforce Development publication *Alaska Economic Trends*, submitted by Gallant as an exhibit in support of his motion for summary judgment, living in Alaska can cost substantially more than living in other areas. Anchorage is over twenty percent more expensive than many other cities, including Phoenix, Dallas, Orlando, and Mont-

gomery. Other Alaskan cities are even more expensive.

26. *Attorney Gen. v. Soto–Lopez*, 476 U.S. 898, 902 n. 2, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (Brennan, J., plurality opinion) (quoting *Zobel*, 457 U.S. at 67, 102 S.Ct. 2309 (Brennan, J., concurring)).

conflict with the constitutional purpose of "maintaining a Union rather than a mere 'league of States.' " [27] The difference between a prohibited penalty and an allowance that neutralizes general cost-of-living differences may only be a matter of degree. If so, we think that the current COLA program does not exceed acceptable limits for two reasons. First, as already noted, the ten percent COLA is reasonably related to the current cost-of-living differential between Alaska and most other areas of the United States. Second, the cost-of-living allowance is a small amount—only ten percent of a retiree's regular monthly benefit. Moreover, relative to a retiree's actual state-related retirement income, the COLA is less than ten percent because most public employees have supplemental retirement income from employer-sponsored defined contribution programs.

We do not mean to suggest that the state would be free to design a public retirement program under which retirees would forfeit a substantial portion of their retirement pay should they decide to move from the state. Any such program would properly be viewed with suspicion as a potential threat to the core values underlying the right of free interstate migration. If every state adopted similar programs, the character of our nation would be changed and retirees effectively might be barred from migrating to other states. But because the COLA payments are related to current cost-of-living differentials between Alaska and most of the rest of the United States, and because they are a small part of retirees' retirement income, we do not think that they infringe substantially on the right to travel.

In *Alaska Pacific Assurance Co. v. Brown,* we reviewed a statute that adjusted and reduced workers' compensation benefits for workers who had moved out of the state.[28] The reduction was made in proportion to the ratio of the Alaska average weekly wage to the average weekly wage in the worker's

state of residence.[29] The reductions could be significant. The worker in *Brown* had moved from Alaska to California. If he had remained in Alaska he would have received $551.86 per week, but as adjusted his benefits were reduced to $211.91 per week.[30] We noted that the purpose of the statute was to adjust benefit levels to the economic environment where recipients lived and that one reason for this was to avoid paying benefits that were so high when compared to a worker's actual living costs that they amounted to a disincentive to return to work.[31] Accepting the legitimacy of these purposes, we held that the statute was unconstitutional, finding it to be not "well designed to achieve" the objective of adjusting benefits to the cost of living of workers who lived outside the state.[32] This was because the statute did not use cost-of-living statistics from other states; rather it used wage levels which tended to yield "an average benefit reduction of approximately 142% of the reduction in the cost of living." [33]

There are at least two important points that serve to distinguish *Brown* from the present case. The first is the amount of the potential reduction in benefits. In the present case benefits cannot be reduced by more than ten percent, whereas benefits under the statute in *Brown* were subject to a reduction of more than sixty percent. The second point is that the purpose of the statute in *Brown* was to equalize real benefit levels between the worker's place of residence and Alaska. This purpose necessarily focused on the living costs in the particular state where the worker lived. Here the purpose is to neutralize the incentive to migrate from Alaska. This purpose only requires that we focus on the general cost-of-living discrepancy between Alaska and most other states.

## IV. CONCLUSION

The purpose of the PERS and TRS COLA payments—encouraging retired public em-

**27.** *Zobel,* 457 U.S. at 73, 102 S.Ct. 2309 (O'Connor, J., concurring).

**28.** 687 P.2d at 266.

**29.** *Id.* at 267.

**30.** *Id.* at 268.

**31.** *Id.* at 272.

**32.** *Id.* at 273–74.

**33.** *Id.* at 274.

ployees to remain in the state—is legitimate. COLA payments are a means that is fairly and substantially related to that purpose. They do not substantially infringe on the right of member retirees to live elsewhere. Considering these determinations, we conclude both that standard scrutiny is appropriate and that limiting COLA payments to resident retirees does not violate the equal protection clause of the Alaska Constitution. Therefore, the judgment of the superior court is REVERSED, and this case is RE-MANDED for further proceedings consistent with this opinion.[34]

34. This decision moots the cross-appeal.