NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| MARVIN JOE KELILA,<br><br>　　　　　　　　Appellant,<br><br>　　　v.<br><br>STATE OF ALASKA,<br><br>　　　　　　　　Appellee. | Court of Appeals No. A-14230<br>Trial Court No. 3AN-20-08530 CR<br><br><br>**O P I N I O N**<br><br><br>No. 2789 — August 23, 2024 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Jack R. McKenna, Judge.

Appearances: Lindsey Bray, Assistant Public Defender, and Terrence Haas, Public Defender, Anchorage, for the Appellant. Ann B. Black, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD.

Under Alaska law, a criminal defendant who spends time on electronic monitoring prior to trial may, under certain circumstances, receive credit against their

sentence for that time.[1] But this credit does not apply to sentences for certain crimes, including felony crimes against a person.[2]

Marvin Joe Kelila pleaded guilty to one count of third-degree assault, a felony crime against a person.[3] Prior to his plea, Kelila spent time on electronic monitoring. Kelila later requested that he receive credit against his felony assault sentence for the time he spent on electronic monitoring. Kelila acknowledged that he was not entitled to such credit under AS 12.55.027(g), but he argued that this law, by granting credit for time spent on electronic monitoring to defendants convicted of some types of crimes but not others, violates the equal protection clause of the Alaska Constitution.

The superior court rejected this argument, and Kelila now appeals. For the reasons explained in this decision, we affirm the judgment of the superior court.

*The history of AS 12.55.027 and Kelila's crime*

In *Nygren v. State*, this Court held that a defendant who spent time, prior to trial, in a residential treatment facility under restrictions approximating incarceration was entitled to credit for that time against their sentence.[4]

Later, in *Matthew v. State*, we held that a defendant who spent time on electronic monitoring prior to trial was *not* entitled to credit against their sentence

---

[1]   AS 12.55.027(a).

[2]   AS 12.55.027(g).

[3]   AS 11.41.220(a)(1)(A).

[4]   *Nygren v. State*, 658 P.2d 141, 142 & n.1, 146 (Alaska App. 1983) (granting credit under AS 12.55.025(c)).

because unlike residential treatment, electronic monitoring does not approximate the restrictions experienced by a person who is incarcerated.[5]

In 2007, the legislature partially codified our holding in *Nygren* in AS 12.55.027.[6] In 2015, the legislature amended AS 12.55.027 to authorize credit for time served on electronic monitoring, at least when the person had not committed a criminal offense while on electronic monitoring and when certain restrictions were placed on the person's freedom of movement and behavior.[7] The sponsor of the bill, Representative Tammie Wilson, stated that the purpose of the bill was to "substantially save money while increasing . . . access to community-based treatments [and the] ability to maintain employment, and reduc[ing] recidivism."[8]

The following year, in 2016, the legislature expanded eligibility for credit for time spent in a treatment program but imposed additional restrictions on the ability to qualify for credit for time spent on electronic monitoring.[9] Of relevance to the current case, the legislature enacted AS 12.55.027(g), which placed a cap of 360 days of credit against any sentence imposed for certain listed crimes, including felony crimes against a person.[10] In other words, defendants convicted only of the listed crimes could receive *some* credit for their time spent on electronic monitoring, but only up to a maximum of 360 days.

---

[5]   *Matthew v. State*, 152 P.3d 469, 472-73 (Alaska App. 2007).

[6]   SLA 2007, ch. 24, § 20.

[7]   SLA 2015, ch. 20, § 2.

[8]   Sponsor Statement from Representative Tammie Wilson, regarding House Bill 15 (Feb. 20, 2015), at 1.

[9]   *See* SLA 2016, ch. 36, §§ 69-71.

[10]   SLA 2016, ch. 36, § 71.

Then, in 2019, the legislature amended AS 12.55.027(g) so that it flatly prohibits granting *any* credit for time spent on electronic monitoring against a sentence of imprisonment imposed for any of the listed crimes.[11] Alaska Statute 12.55.027(g) now states as follows:

> (g) Unless the defendant participated in a residential treatment program under (c) and (f) of this section while under electronic monitoring, a court may not grant credit against a sentence of imprisonment under (d) of this section if the sentence is for
>
> > (1) a felony crime against a person under AS 11.41;
> >
> > (2) a crime involving domestic violence as defined in AS 18.66.990;
> >
> > (3) an offense under AS 11.71 involving the delivery of a controlled substance to a person under 19 years of age;
> >
> > (4) burglary in the first degree under AS 11.46.300; or
> >
> > (5) arson in the first degree under AS 11.46.400.[12]

In October 2020, Kelila was arrested after an altercation with his then-girlfriend, and he ultimately pleaded guilty, in May 2023, to a single count of third-degree assault, which is a felony crime against a person and thus ineligible for electronic monitoring credit under AS 12.55.027(g).[13] Between October 2020 and May 2023, Kelila spent approximately 23 months on electronic monitoring. It is undisputed that,

---

[11]  SLA 2019, ch. 11, § 6. We note that the statutory language prohibits granting credit against a sentence of imprisonment if the sentence is for certain crimes, and that a defendant may be convicted of multiple crimes and have multiple sentences, not all of which would necessarily be subject to the prohibition.

[12]  AS 12.55.027(g), *as amended by* SLA 2019, ch. 11, § 6.

[13]  AS 11.41.220(a)(1)(A).

except for the nature of his crime, Kelila otherwise satisfied the criteria for electronic monitoring credit under AS 12.55.027(d).

Prior to sentencing, Kelila requested credit for the time he spent on electronic monitoring. Kelila argued that AS 12.55.027(g) violates the equal protection clause of the Alaska Constitution by treating people convicted of the enumerated crimes differently from people convicted of other crimes for purposes of determining their eligibility for credit for time served on electronic monitoring.

The superior court rejected Kelila's argument, and Kelila now appeals.

*Why we conclude that AS 12.55.027(g) does not violate the equal protection clause of the Alaska Constitution*

The equal protection guarantee of the Alaska Constitution requires "equal treatment of those similarly situated."[14] "When equal protection claims are raised, the question is whether two groups of people who are treated differently are similarly situated and therefore are entitled to equal treatment under the constitution."[15]

Alaska's core equal protection analysis applies a flexible three-step sliding scale test.[16] However, the Alaska Supreme Court has held that "there are some occasions when a full equal protection analysis may not be necessary because it is so exceedingly clear that the two classes in question are not similarly situated."[17] A court may "summarily conclude that two classes are not similarly situated only in clear cases

---

[14]  *Planned Parenthood of The Great Nw. v. State*, 375 P.3d 1122, 1135 (Alaska 2016) (quoting *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904, 909 (Alaska 2001)).

[15]  *Pub. Emps.' Ret. Sys. v. Gallant*, 153 P.3d 346, 349 (Alaska 2007).

[16]  *Planned Parenthood of The Great Nw.*, 375 P.3d at 1137.

[17]  *Id.* at 1136.

because '[s]uch a conclusion reflects in shorthand the analysis traditionally used in [the supreme court's] equal protection jurisprudence.'"[18]

The superior court resolved this case by applying the shorthand test, concluding that a defendant who commits one of the enumerated crimes (like third-degree assault) is not similarly situated to a defendant who does not commit one of the enumerated crimes for purposes of their sentences' eligibility for credit for time served on electronic monitoring. The superior court reasoned that, as this Court stated in *Maeckle v. State*, a defendant "shares common traits only with other offenders who have committed the same misconduct."[19]

There is considerable support for this conclusion in our case law. In *Alex v. State*, for example, a defendant challenged on equal protection grounds a statute providing that "it is a felony for a felon to escape [prison], while it is a misdemeanor for a misdemeanant to escape."[20] The supreme court rejected this equal protection challenge, explaining that "[i]t is elementary that the power to define crimes and fix punishments rests in the legislature," and that power may "not be confined by narrow or unduly restrictive limits."[21] The supreme court explained that the legislature could reasonably have believed that persons convicted of felonies present a greater threat to the public, or that people convicted of felonies had greater motivation to escape, and that this required a greater penalty to deter felons from escaping.[22]

---

[18] *Id.* at 1136 n.81 (quoting *Shepherd v. State, Dep't of Fish & Game*, 897 P.2d 33, 44 n.12 (Alaska 1995)).

[19] *Maeckle v. State*, 792 P.2d 686, 689 (Alaska App. 1990).

[20] *Alex v. State*, 484 P.2d 677, 684 (Alaska 1971).

[21] *Id.*

[22] *Id.* at 685.

In *Hemphill v. State*, this Court applied the same reasoning to conclude that the classification of forgery as a misdemeanor or felony depending on the type of instrument forged did not violate equal protection.[23] And in *Maeckle v. State*, cited by the superior court in this case, this Court reached the same conclusion with respect to a statute that made it a felony for hunting guides to guide without a valid license, but did not make it a felony for other professionals to practice without a license when a license was legally required.[24] As we explained, "Because Maeckle was subject to the same penalties as any other person committing the same misconduct — that is, guiding without a license — his right to equal protection was not violated by the provision subjecting him to felony sanctions for the offense."[25]

Finally, in *Brown v. State*, this Court held that a statute did not violate equal protection by treating prisoners who received a presumptive term differently from prisoners who received a mandatory minimum term for purposes of eligibility for discretionary parole.[26] We explained that the mandatory minimum and presumptive sentencing provisions at issue "deal[t] with different classes of offenders and serve[d] differing purposes" — specifically, the mandatory minimum sentencing provisions only applied to a limited number of unclassified felonies, which are the most serious crimes in Alaska.[27] We therefore concluded, citing to *Maeckle*, that these two classes of offenders "cannot be deemed similarly situated for purposes of considering an equal protection claim based on disparate sentencing."[28]

---

[23]   *Hemphill v. State*, 673 P.2d 888, 891-92 (Alaska App. 1983).

[24]   *Maeckle*, 792 P.2d at 689.

[25]   *Id.*

[26]   *Brown v. State*, 926 P.2d 1195, 1198 (Alaska App. 1996).

[27]   *Id.* at 1198 & n.2.

[28]   *Id.* at 1198 (citing *Maeckle*, 792 P.2d at 689).

Given this case law, we agree with the superior court that a defendant who commits one of the crimes enumerated in AS 12.55.027(g) is not similarly situated, for purposes of determining eligibility to receive credit for time spent on electronic monitoring, to a defendant who does not commit one of the enumerated crimes. We note that the crimes listed in AS 12.55.027(g) are, generally speaking, crimes of violence (like crimes against a person) or crimes that are otherwise highly dangerous (like arson, or delivering a controlled substance to a person under nineteen years of age). The legislature could reasonably conclude that the goals of sentencing, including protecting the public, community condemnation, and deterrence, would be best served by requiring defendants who commit these crimes to serve their full sentence in prison, rather than being permitted to serve a portion of their sentence on electronic monitoring.

On appeal, Kelila contends that the superior court erred when it failed to apply the full three-prong equal protection test. But applying that test leads to the same results, and for the same reasons.

In order to conduct the full equal protection test, we apply the following three-step process:

> First, it must be determined at the outset what weight should be afforded the constitutional interest impaired by the challenged enactment. . . . Depending upon the primacy of the interest involved, the state will have a greater or lesser burden in justifying its legislation.

> Second, an examination must be undertaken of the purposes served by a challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest.

> Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken. Once again, the state's burden will differ in accordance with the determination of the level of scrutiny under the first stage of analysis. At the low end of the sliding

2789

scale, we have held that a substantial relationship between means and ends is constitutionally adequate. At the higher end of the scale, the fit between means and ends must be much closer. If the purpose can be accomplished by a less restrictive alternative, the classification will be invalidated.[29]

Under the first prong of the test, the court evaluates "the importance of the personal right infringed upon to determine the State's burden in justifying its differential infringement."[30] On appeal, Kelila argues that AS 12.55.027(g) implicates his fundamental rights to liberty, reasonable bail, and rehabilitation. But the statute does not restrict a defendant's access to bail or rehabilitative opportunities, and it therefore has no meaningful impact on a defendant's right to bail or to rehabilitation.

Instead, the practical effect of AS 12.55.027(g) is that defendants who have spent time on electronic monitoring prior to trial and did not commit one of the enumerated crimes will potentially be required to serve less time in prison than defendants who spent time on electronic monitoring prior to trial and are unable to obtain credit against their sentence for one of the enumerated crimes. Thus, "the individual interest affected by the challenged statute is the relatively narrow interest of a convicted offender in minimizing the punishment for an offense."[31] As this Court has previously noted, "[t]his interest, though certainly not negligible, is not sufficiently significant to trigger strict scrutiny of the statute's legislative purposes."[32]

---

[29] *Planned Parenthood of The Great Nw. v. State*, 375 P.3d 1122, 1137 (Alaska 2016) (quoting *Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 269-70 (Alaska 1984)).

[30] *Id.*

[31] *See Maeckle*, 792 P.2d at 689.

[32] *Id.*

Under the second prong, the court examines the "purposes served by a challenged statute."[33] Here, the government has the legitimate purpose of reducing the amount of time served in prison by individuals convicted of only certain offenses (*i.e.*, the non-listed offenses) and who spend time on electronic monitoring.[34]

Finally, the court evaluates "the state's interest in the particular means employed to further its goals"[35] — *i.e.*, "the closeness of the fit between the challenged statute and the state's asserted regulatory interest."[36] Here, we "find no marked deficiency in the challenged statute's approach to fulfilling the state's legitimate interest" in reducing the amount of time individuals convicted of certain offenses serve in prison.[37] The legislature could reasonably conclude that individuals convicted of less serious or less dangerous crimes should be permitted to receive credit for their time served on electronic monitoring, while at the same time concluding that individuals convicted of more serious or more dangerous crimes should be required to serve their full term of imprisonment and should not receive a reduction for time served on electronic monitoring.[38]

---

[33] *Planned Parenthood of The Great Nw.*, 375 P.3d at 1137 (quoting *Alaska Pac. Assurance Co.*, 687 P.2d at 269).

[34] *Cf. Brown v. State*, 926 P.2d 1195, 1198 (Alaska App. 1996) ("[T]he state has a strong and direct interest in establishing penalties for criminal offenders and in determining how those penalties should be applied to various classes of convicted felons. In this arena, the legislature has traditionally been accorded broad authority." (quoting *Dancer v. State*, 715 P.2d 1174, 1180-81 (Alaska App.1986))).

[35] *Planned Parenthood of The Great Nw.*, 375 P.3d at 1137 (quoting *Alaska Pac. Assurance Co.*, 687 P.2d at 269).

[36] *Brown*, 926 P.2d at 1198.

[37] *See id.* at 1199 (quoting *Anderson v. State*, 904 P.2d 433, 436 (Alaska App. 1995)).

[38] *See Gray v. State*, 267 P.3d 667, 673 (Alaska App. 2011) ("A sentencing system that specifies progressively harsher penalties for more progressively serious classes of

For all these reasons, we agree with the superior court that the legislative classification adopted in AS 12.55.027(g) does not violate equal protection.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

offenses is neither novel nor impermissible. This is a form of classification that has traditionally been recognized and upheld as rational." (quoting *Brown*, 926 P.2d at 1199)).