**John D. SQUIRES, Appellant,**

v.

**ALASKA BOARD OF ARCHITECTS, ENGINEERS & LAND SURVEYORS, Appellee.**

No. S–12722.

Supreme Court of Alaska.

April 17, 2009.

Douglas K. Mertz, William F. Cummings, Juneau, for Appellant.

Jenna Rohr Conley, Assistant Attorney General, Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

John D. Squires disputes an agency denial of his request for a waiver of one of two examinations typically required to become a registered engineer. The superior court af-

firmed the agency decision. Squires appeals, claiming the agency erroneously concluded he had failed to present enough verifiable evidence of the twenty years of engineering experience required for an exam waiver. He asserts that the agency erroneously imposed experience verification requirements that were not set out in any statute or regulation. He also asserts that the agency denied him due process by imposing experience verification requirements that could not be met and by disregarding evidence that he was sufficiently qualified to be a registered engineer. He finally argues that the agency denied him equal protection of the law by not treating him like certain other applicants with the "same background, training, and experience."

We conclude that the agency: (1) did not impose improper experience verification requirements by denying his exam waiver request; (2) reasonably found Squires had failed to demonstrate he was entitled to an exam waiver; and (3) did not violate Squires's due process or equal protection rights. We therefore affirm.

## II. FACTS AND PROCEEDINGS

### A. Statutory and Regulatory Background

Alaska Statute 08.48 governs engineer licensing in Alaska. The Board of Registra-

tion for Architects, Engineers, and Land Surveyors (Board) administers the registration process and is statutorily empowered to adopt regulations.[1]

Alaska Statute 08.48.171 provides that an applicant for engineer registration "must be of good character and reputation and shall submit evidence satisfactory to the board of the applicant's education, training and experience."[2] There are two ways to become a registered engineer in Alaska: by examination and by comity.[3]

Examinations are administered pursuant to the Board's procedures and standards regulations; the Board's procedures and standards must meet the requirements of the recognized national examining council for engineers.[4] The Board typically requires applicants to pass two exams. One is the Fundamentals of Engineering exam (often called the FE, but referred to here as the fundamentals exam), testing materials covered in undergraduate engineering programs.[5] The other is the Principles and Practices of Engineering exam (often called the PE, but referred to here as the professional exam), testing practical applications of engineering theories.[6] The Board may waive the fundamentals exam for an applicant who submits

---

1. AS 08.48.011, .101.

2. AS 08.48.201 further provides that a registered engineer application shall:
 (1) be on a form prescribed and furnished by the board;
 (2) contain statements made under oath, showing the applicant's education and a detailed summary of the applicant's technical experience; and
 (3) contain five references, three of whom must be ... engineers ... having personal knowledge of the applicant's ... education, training, or experience.
 12 Alaska Administrative Code (AAC) 36.010(b), (c) & (i) (2005) collectively require that an applicant provide "documentation of the applicant's education, work experience, and responsible charge experience, as required by AS 08.48 and [12 AAC 36]" and provide that an applicant "will not be ... approved for registration until the applicant's qualifications are accepted by the board."

3. *See* AS 08.48.181 & 12 AAC 36.063 (registration upon examination); AS 08.48.191(b) & 12

AAC 36.105 (registration by comity or endorsement).

4. AS 08.48.011, .181; 12 AAC 36.100(c).

5. *See* 12 AAC 36.062. An applicant may qualify for the fundamentals exam with either (1) successful completion of "at least 75 percent of the required credit hours" for an accredited undergraduate degree in engineering, or (2) a demonstration of "satisfactory evidence" that the applicant's educational and work experience meet requirements detailed in the regulation. 12 AAC 36.062(a)(1)-(2). "Education and work experience may not be accumulated concurrently. A maximum of 12 months' credit may be claimed for a calendar year." 12 AAC 36.062(b).

6. *See* 12 AAC 36.063. An applicant may qualify for the professional exam by (1) either passing or obtaining a waiver for the fundamentals exam, and (2) demonstrating "satisfactory evidence" of the applicant's educational and work experience sufficient to meet requirements set out in the regulation. 12 AAC 36.063(a)-(c). "Education

"satisfactory evidence ... to verify 20 years of professional experience." [7]

By comity a registered engineer from another state or foreign country may apply for and obtain Alaska registration if "in the opinion of the board" the prior registration meets all of Alaska's requirements.[8] However, a comity applicant need not have taken a fundamentals exam in the earlier registration process.[9]

The application instructions for registration as an engineer are of particular importance to this appeal. The instructions provide that relevant work experience must be verified by employers or supervisors using the Board's work-experience verification forms. The instructions further provide that relevant work experience must be "verified by a U.S.-registered engineer." These application instructions had been in effect for at least six years before Squires applied for registration as a professional engineer.

### B. Facts and Proceedings

Squires graduated from college in 1969 with a degree unrelated to engineering, but has worked in construction engineering since the early 1970s. He received a master's degree in engineering from the University of Washington in 1988. He has never been a registered engineer in any jurisdiction.

Squires first applied for registration as an engineer in Alaska in December 2003. The Board approved Squires to sit for both the fundamentals exam and the professional exam. Squires then applied for a fundamentals exam waiver, submitting his resume and a summary of his engineering experience. He advised that third-party verifications for his professional experience would be arriving separately, but that "many of the people who supervised my engineering work 20 years ago are either deceased or cannot be located [and this] may cause some difficulties in my meeting the board's waiver requirements." Squires took and passed the professional exam in April 2004.

In August 2004 the Board concluded that Squires had not adequately verified the 240 months of professional experience required for a waiver of the fundamentals exam under 12 AAC 36.090. The Board advised Squires that he had to verify at least 128 more months of professional experience to be eligible for an exam waiver and invited him to submit additional information.

In February 2005 Squires resubmitted his exam waiver request with an affidavit and a summary of his experience. The Board again concluded that Squires had not verified 240 months of professional experience. The Board advised Squires that only 100 months of professional experience had been verified by third-party registered engineers. The Board reiterated that Squires was still approved to sit for the fundamentals exam.

Squires appealed the Board's decision and requested a hearing. An administrative hearing was held in September 2005. In January 2006 the hearing officer issued a proposed Decision and Order concluding, based on the Board's February 2005 calculations, that Squires had failed to adequately document twenty years of relevant professional experience and was not entitled to an exam waiver.

The Board did not act on the proposed decision at its February 2006 meeting. Squires's attorney asked for an "opportunity to present to [the Board] a short, very summary brief that says what we believe is wrong with [the hearing officer's proposed] decision." The Board granted the request, stating that it would not take action until the next Board meeting. Squires's attorney submitted additional materials to the Board and indicated he had asked Squires to attempt to "find more people" who could verify his work experience. The Board's executive director responded that Squires should submit any additional information by May 12, 2006.

In May 2006 Squires presented his case to the Board with additional evidence, including

and work experience may not be accumulated concurrently. A maximum of 12 months' credit may be claimed for a calendar year." 12 AAC 36.063(e).

7. 12 AAC 36.090(a).

8. AS 08.48.191(b).

9. 12 AAC 36.090(b), .105(b).

a spreadsheet titled "Engineering Experience" and letters of reference associated with the listed positions. The Board then met with the hearing officer and adopted the hearing officer's January 2006 proposed Decision and Order denying Squires's exam waiver request.[10]

Squires appealed to the superior court, which affirmed the Board's decision. Squires appeals.

## III. STANDARD OF REVIEW

■ "When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and directly scrutinize the merits of the [agency] decision."[11]

■ We apply our independent judgment to questions of law that do not involve agency expertise, including constitutional questions[12] and whether an agency action is a regulation.[13] The "reasonable basis" test applies when we review questions of law involving agency expertise; under this test, we defer to the agency's statutory and regulatory interpretation unless it is unreasonable.[14]

■ We review an administrative agency's factual findings to ensure they are supported by "substantial evidence."[15] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support the Board's conclusion."[16] "We determine only whether such evidence exists and do not choose between competing

inferences or evaluate the strength of the evidence."[17]

## IV. DISCUSSION

**A. The Board's Third–Party Verification Requirement Is Valid and Not a Regulation Required To Be Promulgated in Accordance with the Administrative Procedure Act.**

■ An applicant for registration as a licensed engineer must demonstrate "evidence satisfactory to the board of the applicant's education, training, and experience."[18] Before being allowed to take the fundamentals and professional exams, an applicant must demonstrate "satisfactory evidence" of minimum levels of education, training, and experience.[19] An applicant may obtain a waiver of the fundamentals exam if "satisfactory evidence" is presented to the Board verifying twenty years of professional experience.[20] The phrases "evidence satisfactory to the board" and "satisfactory evidence" are not defined by statute or regulation.

The application instructions explain that an applicant's work experience must be verified by employers or supervisors using Alaska's work-experience verification forms, and that "[t]he board will not give credit for work experience without the third party verification, even if you have listed the experience." The instructions also state that "[a]pplicants must have their work experience, including responsible charge, verified by a U.S.-registered engineer." The provision for

**10.** AS 44.62.500(a) provides that "[i]f a contested case is heard before an agency ... the hearing officer who presided at the hearing shall be present during the consideration of the case and, if requested, shall assist and advise the agency."

**11.** *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1231 (Alaska 2003).

**12.** *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1127 (Alaska 1999) (citing *Madison v. Alaska Dep't of Fish and Game*, 696 P.2d 168, 173 (Alaska 1985)).

**13.** *Alaska Ctr. for the Env't v. State*, 80 P.3d 231, 243 (Alaska 2003); *Jerrel v. State, Dep't of Natural Res.*, 999 P.2d 138, 141 (Alaska 2000).

**14.** *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982) (citing *United*

*States v. RCA Alaska Commc'ns, Inc.*, 597 P.2d 489, 498 (Alaska 1978)); *Weaver Bros., Inc. v. Alaska Transp. Comm'n*, 588 P.2d 819, 821 (Alaska 1978) (giving agency interpretation deference if it has a "reasonable basis in law and in fact").

**15.** *DeShong*, 77 P.3d at 1231.

**16.** *Lopez v. Adm'r, Pub. Employees' Ret. Sys.*, 20 P.3d 568, 570 (Alaska 2001) (internal quotation marks and brackets omitted).

**17.** *Id.* at 570.

**18.** AS 08.48.171.

**19.** 12 AAC 36.062(a)(2), .063(a)(3).

**20.** 12 AAC 36.090(a).

verification of work experience by a third-party registered engineer does not appear in any regulation or statute, but was in effect for at least six years before Squires submitted his application.

Squires observes that AS 08.48.181 requires the Board to comply with the Administrative Procedure Act (APA) in adopting "standards and procedures related to professional examinations." [21] He thus argues that the Board, in determining that "satisfactory evidence" of his professional experience required independent third-party verifications by registered engineers, must comply with the APA process for adopting new regulations.[22] Because the Board did not, Squires asserts that the independent verification requirement is invalid. He essentially argues that the independent verification requirement is an additional regulation, rather than the kind of routine statutory interpretation within the agency's discretion.[23]

 In determining whether an agency policy or rule is a "regulation" that must be promulgated in compliance with the APA requirements, we examine its "character and use." [24] "[O]ne of the statutory indicia of a regulation is that it implements, interprets or

makes specific the law enforced or administered by the state agency." [25] Alaska Statute 44.62.640(a)(3) provides that "whether a regulation, regardless of name, is covered [by the APA] depends in part on whether it affects the public or is used by the agency in dealing with the public." [26] It also states that "regulation" "does not include a form prescribed by a state agency or instructions relating to the use of the form." [27]

Squires relies primarily on two cases to support his argument. In *Jerrel v. State Department of Natural Resources*, the Jerrels contested a Department of Natural Resources (DNR) rule requiring identifying marks on animals on state grazing leases to be visible from at least twenty feet.[28] The relevant regulation empowered the director to "require that the livestock be tagged, dyed, or otherwise marked," but did not specify any particular level of visibility.[29] DNR first pronounced the twenty-foot rule in a letter to the Jerrels and conditioned renewal of their land leases on compliance.[30] The Jerrels proposed placing tags on the manes of their animals.[31] DNR informed them that plastic tags would be insufficiently perma-

---

21. AS 08.48.181 provides:
 Except as provided in AS 08.48.191, for registration as a professional architect, professional engineer, professional land surveyor, or professional landscape architect, *a person shall be examined in this state in accordance with the regulations of procedure and standards adopted by the board under AS 44.62 (Administrative Procedure Act).* The procedure and standards shall at least meet the requirements adopted by recognized national examining councils for these professions. (Emphasis added.)

22. AS 44.62.190–.215; *see also Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation*, 145 P.3d 561, 573 (Alaska 2006).

23. AS 44.62.640(a)(3) defines a "regulation":
 [E]very rule, regulation, order, or standard of general application or the amendment, supplement, or revision of a rule, regulation, order, or standard adopted by a state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one that relates only to the internal management of a state agency; "regulation" does not include a form prescribed by a state agency or instructions relating to the use of the form, but this provision is not a limitation upon a requirement that a regulation be adopted under this chapter when one is need-

ed to implement the law under which the form is issued; "regulation" includes "manuals," "policies," "instructions," "guides to enforcement," "interpretative bulletins," "interpretations," and the like, that have the effect of rules, orders, regulations, or standards of general application, and this and similar phraseology may not be used to avoid or circumvent this chapter; whether a regulation, regardless of name, is covered by this chapter depends in part on whether it affects the public or is used by the agency in dealing with the public.

24. *Jerrel*, 999 P.2d at 143.

25. *Id.* (internal quotation marks omitted).

26. AS 44.62.640(a)(3); *see also Jerrel*, 999 P.2d at 143.

27. AS 44.62.640(a)(3).

28. 999 P.2d at 139.

29. *Id.* at 140 n. 3.

30. *Id.* at 140, 142.

31. *Id.* at 142–43.

nent, but retreated from its twenty-foot visibility requirement by proposing permanent tattoos.[32] When the Jerrels proposed ear tattoos, DNR "again reversed its position in response to complaints from the neighboring landowners and insisted on brands that would meet the twenty-foot visibility requirement."[33] The Jerrels argued that DNR did not interpret its existing regulations in creating the twenty-foot rule, but instead established a new regulation without complying with the APA.[34]

We held that DNR's twenty-foot visibility requirement included "core characteristics of a regulation" and was invalid because the APA's procedural standards had not been satisfied.[35] First, DNR created the requirement "to interpret, make specific and implement the statutory requirement that a mark or brand 'show[ ] distinctly.'"[36] Second, DNR used the requirement "as a tool in dealing with the public," rather than as an internal guideline.[37] We concluded that DNR "actually based its decision to terminate the Jerrels' leases upon the fact that the Jerrels did not comply with its 'policy.'"[38]

In *State v. Tanana Valley Sportsmen's Ass'n*, the Alaska Board of Game issued verbal instructions to its agents modifying the criteria for re-issuing hunting permits so that preference would go to persons who relied most heavily on wild game for sustenance.[39] We held that regulations governing subsistence hunting were subject to the APA requirements and that nothing in the APA authorized the board "to impose require-

ments not contained in written regulations by means of oral instructions to agents."[40] We explained that "[o]bviously, such verbal additions to regulations involving requirements of substance are unauthorized and unenforceable."[41]

Squires acknowledges our holding in *Alyeska Pipeline Service Co. v. Alaska Department of Environmental Conservation*[42] that common sense statutory interpretations do not require formal rulemaking. There we concluded that "[a]lthough the [APA] may require rulemaking in cases in which an agency's interpretation of a statute is expansive or unforeseeable, or in cases in which an agency alters its previous interpretation of a statute, obvious, commonsense interpretations of statutes do not require rulemaking."[43] We explained:

> Although the definition of 'regulation' is broad, it does not encompass every routine, predictable interpretation of a statute by an agency. Nearly every agency action is based, implicitly or explicitly, on an interpretation of a statute or regulation authorizing it to act. A requirement that each such interpretation be preceded by rulemaking would result in complete ossification of the regulatory state.[44]

We thus held the agency's rule allowing it to recoup costs incurred defending permit appeals was a common sense interpretation of a statute authorizing the agency to bill for the cost of "reviewing ... permits," not a separate regulation requiring compliance with the APA.[45]

**32.** *Id.* at 143.

**33.** *Id.*

**34.** *Id.* at 143.

**35.** *Id.* at 143–44.

**36.** *Id.* at 143.

**37.** *Id.* at 143–44.

**38.** *Id.* at 144.

**39.** 583 P.2d 854, 855 (Alaska 1978).

**40.** *Id.* at 858.

**41.** *Id.*

**42.** *Alyeska Pipeline Serv. Co.,* 145 P.3d 561.

**43.** *Id.* at 573; *see also Alaska Ctr. for the Env't,* 80 P.3d at 243–44. In the latter case, we held that an agency interpretation of a regulation defining "major energy facility" was not a regulation because it was merely "a common sense interpretation of the regulation's applicability." *Alaska Ctr. for the Env't,* 80 P.3d at 243–44. We distinguished *Jerrel,* explaining that the rule at issue there "was a new substantive requirement that made that regulation more specific and thus a new regulation, necessitating compliance with the [APA]." *Id.* at 244 n. 40.

**44.** *Alyeska Pipeline Serv. Co.,* 145 P.3d at 573.

**45.** *Id.* at 566, 573.

Relying on *Jerrel* and *Tanana Valley Sportsmen's Ass'n*, Squires asserts that the third-party verifications required by the application instructions are "not solely a matter of the internal management of the agency" because they "prescribe the only acceptable type of proof to show each month of an applicant's professional career." He concludes that the third-party verification requirement is a "substantive requirement without which an applicant [cannot] qualify for a license." Squires also argues that unlike the cost recovery rule in *Alyeska Pipeline Service Co.*, the third-party verification requirement here is "not foreseeable from the existing authority." He claims that the requirement should have been articulated in regulations subject to the APA notice and hearing requirements because the phrase "satisfactory evidence," found in 12 AAC 36.090, "could be interpreted to mean anything from live testimony at a hearing to an affidavit from the applicant himself."

We conclude that the third-party verification requirement is not a regulation and need not have been promulgated in accordance with the APA. The verification requirement is not unforeseeable—AS 08.48.201(a)(3) requires an engineer's application to "contain five references, three of whom must be ... engineers ... having personal knowledge of the applicant's ... education, training, or experience." Nor does the verification requirement reflect a sudden shift in the Board's interpretation of the phrase "satisfactory evidence," given that the requirement existed for at least six years before Squires's waiver application. Finally, because a registered engineer is likely best qualified to assess the quality of a prospective engineer's work, the third-party verification requirement is a common sense interpretation of the phrase "satisfactory evidence."

We recognize that the third-party verification requirement has some of the same indicia of a regulation as in *Jerrel*. It does in a sense "interpret, make specific and implement" the statutory requirement of "satisfactory evidence," and it is a "tool for dealing with the public" as well as establishing internal guidelines for evaluating applicant qualifications.[46] But in *Jerrel,* we were primarily concerned that DNR "singled out" the Jerrels for enforcement of a new rule and that such ad hoc decision-making could allow agency action to be motivated by "improper influences."[47] Squires presented no evidence that the Board has applied its longstanding third-party verification requirements unevenly.[48] The third-party verification requirement applies to all applicants for engineer registration in Alaska, not just to persons seeking an exam waiver. Squires was able to meet the verification requirements to sit for both the fundamentals exam and the professional exam. The record also demonstrates that other individuals have used third-party verifications to meet the twenty-year requirement for a waiver of the fundamentals exam.[49] And unlike in *Tanana Valley Sportsmen's Ass'n,* where substantive changes to hunting permit requirements were verbally issued to Board of Game agents,[50] the third-party verification requirement is plainly stated in writing in the application instructions.

▮ The APA is meant to reduce the risk of arbitrary application and to inform the public of regulations. Squires has not dem-

---

**46.** *Jerrel*, 999 P.2d at 143–44.

**47.** *Id.*

**48.** Squires argued that the Board irregularly enforced the third-party requirement because Ms. Vinson, a licensing examiner handling engineering applications, told him that the third-party verification need not be from a supervisor. This argument lacks merit. Ms. Vinson testified before the Board she told Squires that if he could not find a supervisor, the Board sometimes would accept verification of a registered engineer who also worked on the project but did not supervise the applicant. Although the Board

may have made concessions on the supervisor requirement, third-party verification from a registered engineer was still required.

**49.** The Board receives only about six waiver applications per year. Of that small group, it approves some and denies others. The Board's current licensing examiner testified that in the two years she held the position, she personally worked on four other waiver applications, and those applicants successfully verified twenty years of professional experience.

**50.** *Tanana Valley Sportsmen's Ass'n*, 583 P.2d at 858.

onstrated that the third-party verification requirement in the application instructions is obscure or creates a meaningful risk of arbitrary application. Accordingly we conclude that the third-party verification requirement is not a regulation and affirm the superior court's decision on this issue.

### B. Substantial Evidence Supported the Board's Conclusion that Squires Failed To Present Sufficient Evidence that He Had Twenty Years of Engineering Experience.

Squires argues that the Board erred by concluding that he failed to present adequate evidence to merit a fundamentals exam waiver. Squires claims he submitted evidence showing 309 months of engineering experience, exceeding the twenty years (240 months) required by 12 AAC 36.090(a), and that 280 of the 309 months were supported by third-party affidavits. Squires acknowledges that not all of his third-party verifications were from registered engineers, contravening the application instructions. He also acknowledges that he alone attested to twenty-nine months of experience. But Squires argues that he failed to present the requisite third-party verifications from registered engineers because he was the only engineer on the project or because the project engineers had died or could not be found.

Whether an applicant is qualified to become a registered engineer is a question involving agency expertise.[51] We therefore defer to the Board's interpretation of "evidence satisfactory to the board" or "satisfactory evidence" unless unreasonable. The Board has adopted the position (represented in the application instructions) that fundamentals exam waivers will be granted to applicants only if they present twenty years of experience verified by third-party registered engineers. We conclude that this is a reasonable interpretation of the "satisfactory evidence" requirement in light of the public

safety issues involved and the fact that other individuals have been granted exam waivers based on verification of twenty years of experience.

Substantial evidence supports the Board's factual findings about the amount of time Squires was credited for his engineering experience and its ultimate conclusion that Squires failed to submit satisfactory evidence of twenty years of relevant experience. Based on the verifications Squires submitted in February 2005, the Board awarded Squires credit for 100 months of professional experience. Our review of Squires's February 2005 summary supports the Board's conclusion that Squires did not adequately verify the required 240 months of professional experience.

The February 2005 summary rarely identifies the name of the employer or company for whom Squires worked. For example it states that between 1974 and 1980, Squires "[d]esigned numerous concrete mixes for special needs," but it does not say for whom he designed the mixes or where they were used. Squires allocated thirty months for that work. Squires also credited himself ten months for " 'expert witness' services" performed over a ten-year period. But he does not identify any cases or specify the exact nature of his testimony. Squires gave himself double credit for the time he was enrolled in the master's engineering program at the University of Washington and doing other work, but regulations provide that "[e]ducation and work experience may not be accumulated concurrently" and that applicants may claim "[a] maximum of 12 months' credit ... for a calendar year."[52] Some of Squires's third-party verifications are similarly inappropriate, for example addressing his good character but not his work on specific projects.

The additional evidence Squires submitted at the May 2006 Board meeting fails to sup-

---

**51.** *See* AS 08.48.171 (requiring applicant to "submit evidence satisfactory to the board of the applicant's education, training and experience"); AS 08.48.191(b) (allowing comity registration "based on verified evidence" if "in the opinion of the board" the earlier registration meets requirements of AS 08.48); 12 AAC 36.010(b) ("An applicant will not be ... approved for registra-

tion until the applicant's qualifications are accepted by the board.").

**52.** 12 AAC 36.062(b) (eligibility standards for fundamentals exam); 12 AAC 36.063(e) (eligibility standards for professional exam).

port his assertion that he verified 240 months of professional experience. Squires submitted a revised explanation of his engineering experience with annotations to "new" verification evidence, but the "new" evidence did not add up to the additional 140 months needed for an exam waiver. Several documents were general recommendation letters not written by registered engineers. Others attested to his experience with some detail, but were not from registered engineers. Several third-party verifications from registered engineers already had been accounted for in the Board's February 2005 calculations. A new letter from one registered engineer stated only that he had worked with Squires for "over ten years" and gave a single example of a project, but was otherwise uninformative.

In light of the Board's interpretation of "satisfactory evidence" and the evidence actually presented, the Board reasonably concluded that Squires submitted insufficient evidence of 240 months of professional engineering work. Substantial evidence supports the Board's conclusion. We therefore affirm the superior court's decision on this issue.

### C. The Board Did Not Violate Squires's Due Process Rights by Denying Him an Exam Waiver.

Squires argues that the Board violated his due process rights by denying him an exam waiver. Specifically he argues that the Board violated his due process rights by: (1) requiring third-party verifications to prove the professional experience needed to obtain an exam waiver; (2) refusing to accept his sworn statements in lieu of third-party verifications; and (3) failing to account for evidence he submitted after the hearing officer made findings. Although Squires asserts he is challenging a "denial of substantive due process," these challenges to the procedures for obtaining an exam waiver are more accurately described as procedural due process claims. Squires also contends it was a violation of due process to require him to take the fundamentals exam even though he had already passed the professional exam. This

challenge to the Board's licensing requirements amounts to a substantive due process claim. Because we hold the Board did not violate Squires's due process rights, procedural or substantive, we affirm the superior court's decision on this issue.

### 1. The Board did not violate Squires's due process rights by requiring third-party verifications for work experience.

We evaluate procedural due process claims under the balancing test established in *Mathews v. Eldridge*,[53] considering several factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[54]

Squires characterizes the third-party verification requirement for an exam waiver as a refusal to grant him the right to practice engineering without verification of his professional experience by registered engineers. He claims the Board, in maintaining this "impossible" requirement, deprived him of a "fundamental right" to practice his profession. This characterization is inaccurate because Squires is not barred from obtaining an engineering license if he cannot produce the required third-party verifications; he still may take and pass the fundamentals exam. At stake here is Squires's interest in obtaining a waiver for that exam. The Board's refusal to grant a waiver does not deprive Squires of his livelihood; it merely requires him to expend time and effort studying basic engineering concepts. Although not insignificant, his interest in obtaining an exam waiver is by no means "fundamental."

Squires asserts that he provided third-party verifications for his experience except when there was no registered engineer supervising the job, or when the registered

---

**53.** 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**54.** *Id.* at 335, 96 S.Ct. 893.

engineer had died or was impossible to locate. He argues that "[i]t is a clear denial of substantive due process to deny his application and his license on the basis of a requirement that cannot, literally, be complied with." He suggests the Board should, in its exam waiver procedures, maintain less stringent proof requirements for documenting professional experience, such as crediting his sworn testimony. Although past applicants' successful attempts to obtain exam waivers prove that the requirement is not "impossible" to meet, it is true that maintaining the rigorous requirement of third-party verifications may deny exam waivers to applicants who have the professional experience to qualify for them. However we believe the risk of relaxing proof requirements for exam waivers outweighs the risk of erroneously denying a waiver. The Board's mission is to ensure the public health, safety, and welfare by regulating the practice of engineering. The Board therefore has a significant interest in ensuring that registered engineers are qualified. The third-party verification requirement is a reasonable way for the Board to determine an applicant's experience. Given the nature of the potential harm—a collapsed bridge and resulting injuries to persons and property, for example—the Board's interests in protecting the public by verifying professional qualifications outweigh Squires's interest in not taking the fundamentals exam.

Squires quotes *State v. Valley Hospital Ass'n*[55] for the proposition that "adherence to a valid regulation can be illegal when there are unusual circumstances that make such adherence highly unreasonable."[56] He claims that his circumstances are unusual enough to warrant a waiver of the third-party verification requirement given the nature of his specialty, the duration of his career, and the fact that many of his prospective references are in Washington State. However we did not decide *Valley Hospital Ass'n* on constitutional grounds,[57] so the case provides no support for Squires's due process claims. We held adherence to the otherwise valid regulation in that case was erroneous because it produced a result that both parties acknowledged was inaccurate, and because the agency's reasons for adhering to the regulation in the circumstances were "so insubstantial as to render [it] an abuse of discretion."[58] Valid and substantial reasons support the third-party verification requirements here, and the Board disputes rather than concedes that Squires's professional experience entitles him to an exam waiver. Squires's reliance on *Valley Hospital Ass'n* is unpersuasive.

We conclude that the Board did not violate Squires's due process rights by requiring him to provide verification of his professional experience by registered engineers to obtain a fundamentals exam waiver.

**2. The Board did not violate Squires's due process rights by refusing to accept his sworn statements in lieu of third-party affidavits from registered engineers.**

Squires next argues that the Board improperly refused to recognize his first-

**55.** 116 P.3d 580 (Alaska 2005).

**56.** *Id.* at 586.

**57.** *Id.* at 584.

**58.** *Id.* at 587 (quoting *Bellsouth Corp. v. FCC*, 162 F.3d 1215, 1224 (D.C.Cir.1999)) (internal quotation marks omitted). In *Valley Hospital Ass'n*, we considered whether the Department of Health and Social Services (DHSS) was required to recalculate the reimbursement rate for the cost of treating Medicaid patients. Valley Hospital under-reported its costs because of antiquated bookkeeping, but ultimately identified the error. DHSS attempted to strictly enforce a change in the method of calculating reimbursement rates that would have resulted in an approximately $700,000 detriment to Valley Hospital without giving it the opportunity to submit updated, corrected costs. We held that "[u]nder the unusual circumstances of this case, we think DHSS was required to make an exception to [the regulation], and to use some more reasonable method of calculating Valley's ancillary charges." *Id.* at 586. We explained that we reached this conclusion because: (1) it was unclear whether the regulation at issue was validly promulgated; (2) DHSS did not provide a compelling reason to prefer using the hospital's old data; (3) there was an inherent risk of error because the agency relied on data that had been submitted without notice of how it might be used; and (4) DHSS's staff knew at the time the hospital submitted the data that the older data would result in a lower reimbursement rate. Under the circumstances we concluded that the hospital "suffered a substantial injustice, offset by no compelling justification." *Id.* at 587.

person testimony as sufficient for a waiver, in the absence of any contradictory evidence in the record. He claims that by ignoring his testimony the Board violated his right to due process. This argument fails for the same reason as his due process challenge to third-party verifications: Squires has not demonstrated that his interest in obtaining an exam waiver outweighs the government's interest in ensuring the competency of registered engineers. The Board is not obliged to present evidence to rebut Squires's self-serving claims about his ability and experience. Rather Squires bears the burden of verifying his own experience to the Board's satisfaction.[59] We agree with the Board that first-person testimony about one's professional work experience, "without independent confirmation, would cast doubt on the professional qualifications of people whose work can greatly impact the safety of the public and private industry." The Board's refusal to credit this testimony and waive the exam requirement for Squires did not violate due process.

3. **The Board did not violate Squires's procedural due process rights by failing to account for evidence he submitted after the hearing officer made his findings.**

 Squires argues that the Board denied him due process by not considering evidence he submitted after his September 2005 hearing, but before the Board made its final decision in May 2006. He asserts that the Board erroneously adopted the hearing officer's January 2006 proposed decision, which was drafted before Squires submitted additional evidence in May 2006.

 We have held that an agency must consider "highly relevant" current evidence.[60] Once an agency makes an adjudicative deci-

sion, it must articulate its reasons even if there is no statutory duty to make findings.[61]

The Board did not violate Squires's due process rights by adopting the hearing officer's proposed decision without amending it to address the evidence Squires submitted at the May 2006 meeting. Squires had ample opportunity to be heard—not only at his hearing in September 2005 but also at two separate Board meetings in February and May 2006. He also had three chances to submit third-party verifications to the Board: in 2004 when he first applied, in 2005 when he re-applied, and in 2006 when he approached the Board after the hearing officer denied his waiver application. Because the evidence Squires submitted at the May 2006 Board meeting was either redundant or too general to adequately support his waiver request, it was not "highly relevant" current evidence that may have had a bearing on the outcome of his case. The Board already had accounted for the time covered by many of the letters presented, and the remaining letters failed to verify the 100 months of work experience Squires would need to obtain a waiver.

In light of Squires's numerous opportunities to submit information and the absence of "highly relevant" additional information, we conclude that the Board did not violate Squires's due process rights by adopting the hearing officer's decision without additional comment.

4. **The Board did not violate Squires's substantive due process rights by requiring him to take the fundamentals exam even though he had already passed the professional exam.**

 Squires maintains that the Board denied him due process by requiring him to pass an "elementary" exam even though he

---

**59.** *See* AS 08.48.171 (requiring applicants to submit "evidence satisfactory to the board of the applicant's education, training and experience"); 12 AAC 36.090(a) (requiring applicants for exam waiver to submit "satisfactory evidence" of relevant work experience). These provisions put the burden on the applicant to present evidence of qualification.

**60.** *State, Dep't of Commerce & Econ. Dev. v. Schnell,* 8 P.3d 351, 360 (Alaska 2000).

**61.** *City of Nome v. Catholic Bishop of N. Alaska,* 707 P.2d 870, 875 (Alaska 1985) ("Such findings facilitate judicial review, insure careful administrative deliberation, assist the parties in preparing for review, and restrain agencies within the bounds of their jurisdiction.").

had already passed an "advanced" exam. Because Squires challenges a substantive requirement for obtaining an engineering license, he asserts a denial of substantive due process.

"The due process clause guarantees more than fair process . . . it also includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." [62] Squires asserts that "[t]he right to practice one's own profession is a fundamental right." [63] Although the right to practice one's profession is protected by the due process clause, it is not "fundamental," and it may be regulated so long as those regulations are reasonably related to a legitimate purpose. [64]

"If any conceivable legitimate public policy for the enactment is either apparent or offered by those defending the enactment, the party challenging it must disprove the factual basis for the justification." [65] Squires argues that the fundamentals exam's purpose is to ensure basic competence among new engineers entering the field. He contends that because he has already demonstrated basic competence by working in construction for thirty years, obtaining a master's degree in engineering, and passing the more advanced and application-specific professional exam, the fundamentals exam "serves no legitimate purpose." Even if the examination is redundant for an applicant in his position, Squires does not show that the requirement is unrelated to the Board's legitimate goal of minimizing the risk of public harm posed by unqualified engineers. He also argues that "the only real connection with requiring the [fundamentals exam] for such a person is the goal of limiting competition with the senior engineers already licensed," but such speculation, without more, does not disprove that the regulation was adopted to ensure only competent candidates are licensed as engineers in Alaska. The Board therefore did not violate Squires's substantive due process rights by requiring him to take the fundamentals exam.

### D. A Different Waiver Standard for Registered Engineers from Other Jurisdictions Does Not Violate Squires's Equal Protection Rights.

By comity a registered engineer in another state or Canada who has been practicing for five years or more may obtain an Alaska license if the Board decides the prior registration meets Alaska's requirements, [66]

---

**62.** *Treacy v. Muni. of Anchorage*, 91 P.3d 252, 268 (Alaska 2004) (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)) (internal quotation marks omitted).

**63.** Squires points out that the right to earn a living is a fundamental right under the federal constitution's privileges and immunities clause. *Sheley v. Alaska Bar Ass'n*, 620 P.2d 640, 643 (Alaska 1980); U.S. Const. art. IV, § 2, cl. 2. The right to engage in an economic endeavor within a particular industry is an "important" right for state equal protection purposes. *State v. Enserch*, 787 P.2d 624, 632 (Alaska 1989) (citing *Comm'l Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255, 1266 (Alaska 1980)); Alaska Const. art. I, § 1. However the privileges and immunities and equal protection clauses are inapposite to Squires's due process claims.

**64.** *See Conn v. Gabbert*, 526 U.S. 286, 291–92, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) ("[T]his Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation."); *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) ("A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law."); *Dittman v. California*, 191 F.3d 1020, 1030–32 (9th Cir.1999) (holding requirement that applicant provide social security number in order to renew acupuncturist's license was rationally related to legitimate state interest and did not violate due process).

**65.** *Anderson v. State ex rel. Cent. Bering Sea Fishermen's Ass'n*, 78 P.3d 710, 716 (Alaska 2003) (quoting *Gonzales v. Safeway Stores*, 882 P.2d 389, 397–98 (Alaska 1994)).

**66.** AS 08.48.191(b); 12 AAC 36.105. In relevant part 12 AAC 36.105 states:

> Engineer registration by comity[.]
> . . . .
> (b) An applicant for engineering registration by comity shall submit verification of current registration to practice engineering in another

excepting the fundamentals exam.[67]

Squires argues that the comity regulations violate his equal protection rights because together with 12 AAC 36.090, which governs exam waivers, they permit the Board to waive the fundamentals exam for Canadian engineers who were educated in Canada, have worked only five years, and have passed the Alaska professional exam.[68] Squires asserts that Canadian-educated engineers need not take a fundamentals exam to become registered engineers in Canada. Squires then contends that his situation is "identical" to that of a Canadian engineer seeking registration by comity under 12 AAC 36.105(c)(3) and that "there is no practical difference" between Canadian engineers' situation and his own.

 The Alaska Constitution provides that all persons are "entitled to equal rights, opportunities, and protection under the law."[69] This command requires state and local governments to treat similarly situated individuals alike.[70] In equal protection cases, "the question is whether two groups of people who are treated differently are similarly situated and therefore are entitled to equal treatment under the constitution."[71] To determine whether differently treated groups are similarly situated, we examine "the state's reasons for treating the groups differently."[72]

 The portion of a law treating two groups differently is a "classification."[73] A law based on a non-suspect classification will survive as long as a "legitimate reason for the disparate treatment exists" and the law creating the classification "bears a fair and substantial relationship to that reason."[74] A law based on a suspect classification—such as race, national origin, or alienage—or that infringes on fundamental rights will survive only if it is "necessary" to achieve a "compelling state interest."[75]

Squires's equal protection argument fails because he is not similarly situated to licensed Canadian engineers seeking registration by comity. The classification at issue here is not national origin, but registration status. A Canadian engineer may seek registration by comity only *after already being registered for at least five years* in Canada.[76]

licensing jurisdiction that was based upon education, experience, and examination requirements that, in the opinion of the board, were at least equivalent to the requirements of AS 08.48 and this chapter at the time the applicant's out of state registration was issued. An applicant who otherwise meets the requirements of this section is not required to demonstrate having passed the fundamentals of engineering examination.
(c) An applicant for engineering registration by comity shall
. . . .
(2) if the applicant has been practicing engineering as a registered engineer for five years or more in a state ... of the United States ... provide two current letters of reference from registered engineers practicing the specific branch of engineering for which the applicant has applied; or
(3) if the applicant has been practicing for five years or more as a professional engineer in Canada, under a license issued by a provincial or territorial engineering association or order,
(A) provide two current letters of reference from engineers registered in a state, territory, or possession of the United States, the District of Columbia, or a province or territory of Canada; and
(B) if the applicant has not taken an examination that meets the requirements of (b) of this section, pass the examination listed in 12 AAC

36.100(c) in the branch of engineering for which the applicant has applied.

67. 12 AAC 36.090(b); 12 AAC 36.105(b).

68. Squires's brief also alleges that the comity regulations violate his due process rights, but he fails to offer any argument or analysis to support this claim. We deem this argument waived for lack of adequate briefing. *See, e.g., Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) (concluding that an issue will not be considered on appeal when it is only cursorily addressed in the opening brief).

69. Alaska Const. art. I, § 1.

70. *Gonzales v. Safeway Stores, Inc.,* 882 P.2d 389, 396 (Alaska 1994).

71. *Pub. Employees' Ret. Sys. v. Gallant,* 153 P.3d 346, 349 (Alaska 2007).

72. *Id.*

73. *Id.*

74. *Id.* (internal quotation marks omitted).

75. *Id.* at 350.

76. 12 AAC 36.105(c)(3).

Under 12 AAC 36.105(b) a comity applicant must verify current registration "based upon education, experience, and examination requirements that, in the opinion of the board, were at least equivalent to the requirements of AS 08.48 [governing licensing for engineers] and this chapter at the time that the applicant's out of state registration was issued." Although Canadian-educated engineers do not have to take a fundamentals exam in Canada, they still must obtain an undergraduate degree in engineering, work for four years, and then take a professional exam to become registered there.[77]

Both Canadian and American engineers registered in other jurisdictions must meet the same requirements for registration by comity in Alaska.[78] Squires has never been a registered engineer in any jurisdiction, so he is not similarly situated to either American or Canadian engineers who already have been registered in another jurisdiction, even though they may have less work experience. And as the superior court noted in its order, the twenty-year waiver rule applies the same standard to both unregistered American and Canadian applicants.

We therefore affirm the superior court's decision on this issue.

## V. CONCLUSION

We AFFIRM the superior court's decision in its entirety.

---

77. CANADIAN ENGINEERING QUALIFICATIONS BD., GUIDELINE ON ADMISSION TO THE PRACTICE OF ENGINEERING IN CANADA 5, 15, 20 (2001).

78. *Compare* 12 AAC 36.105(c)(2) *with* subsection .105(c)(3).